**SO ORDERED.**

**SIGNED this 30 day of April, 2010.**

_____
**JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| MICHAEL W. SWEET | : | |
| BARBARA SWEET, | : | |
| | : | |
| Debtors | : | Case No. 09-31829 JPS |
| | : | |

BEFORE

JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

| | |
|---|---|
| Debtors: | Chris R. Morgan
1090-C Founders Blvd.
Athens, Georgia 30606 |
| Chapter 13 Trustee: | Tony D. Coy
P. O. Box 954
Macon, Georgia 31202 |

**MEMORANDUM OPINION**

This matter comes before the Court on the Chapter 13 Trustee's Amended Objection to Confirmation of the Debtors' amended Chapter 13 Plan. At the hearing on the objection, the parties stipulated to certain facts and agreed that the Court could take judicial notice of the contents of the various filings by the Debtors in this case. Upon considering that evidence and the arguments of counsel, the Court now publishes this memorandum opinion.

FACTS

Debtors Michael W. Sweet and Barbara Sweet filed their Chapter 13 case on November 5, 2009. Debtors own a home in Walton County, Georgia, which they value at $290,000 on their Amended Schedule A. The home is subject to a first priority mortgage held by Chase Home Finance of $323,000, and a second priority mortgage also held by Chase in the amount of $110,000. Thus, Debtors have no equity in the home. Debtors purchased their home in 2007 for $435,000. At that time, Mr. Sweet was making $260,000 per year. However, he subsequently lost his job and is now self-employed and makes approximately $7,200 per month. Debtors and their two children, ages 10 and 15, live in the home.

In their bankruptcy schedules, Debtors listed personal property having a value

of $10,600, all of which is claimed as exempt under 11 U.S.C. § 522(b)(3). None of their personal property appears to be extravagant.

According to the stipulated facts, Debtors did not incur any new debt after Mr. Sweet lost his job. Rather, Debtors went through their savings until they were forced to file this bankruptcy case. This is the first bankruptcy case that Debtors have ever filed.

Pursuant to their amended Chapter 13 plan, Debtors will pay $1,635 per month to Trustee for a period of 60 months.[1] From this amount, Trustee will receive her fee for administration of the case and will pay attorney's fees of $3,500, a secured IRS lien of $10,600, and an arrearage of $4,700 owed to Chase Home Finance on the first mortgage. Priority claims are to be paid in full and unsecured creditors are to receive a total of $25,000 which will yield a dividend of slightly less than 8 percent.[2] Debtors are to make the monthly payments of $2,333 on the first priority mortgage to Chase "outside the plan." Debtors propose to surrender a 2006 car and to retain two older vehicles which are "paid for," a 1999 car and a 2004 truck.

Trustee acknowledges that Debtors have proposed a "bare bones" budget and that Debtors "are trying." Trustee also acknowledges that Debtors are under the

---

[1] Amended Schedule J lists Debtors' net monthly income (average monthly income less expenses) as $1,636.67.

[2] This assumes that Debtors are successful in objecting to two unexpected claims asserted by a former employee which total $600,00.

3

applicable "median income" and that they were probably eligible to file a Chapter 7 case instead of a Chapter 13 case. The deadline for creditors to object to the dischargeability of claims has passed without any objection being filed. Debtors have no unusual or special circumstances or inordinate medical needs.

The amended plan hinges on Debtors being able to successfully strip off the second mortgage on their home held by Chase. Debtors have filed an adversary proceeding contending that the second mortgage is wholly unsecured and can be avoided. As of the publishing of this opinion, Chase had not filed a response to this complaint.

Trustee objects to confirmation of Debtors' amended plan contending that the plan has not been proposed in good faith because Debtors are proposing to keep a large home while paying a low-percentage dividend to unsecured creditors.[3] The monthly mortgage payment of $2,333 represents approximately 32 percent of the Debtors' gross monthly income.

Trustee acknowledges that the projected plan payments meet the disposable income test as required by 11 U.S.C. § 1325(b). Nevertheless, Trustee contends that Debtors are proposing to pay an unreasonable amount of their income in order to retain a home in which they have no equity while at the same time paying a low

---

[3] In her amended objection to confirmation, Trustee also contended that the proposed plan could not be completed within 60 months as required by 11 U.S.C. § 1322. However, Trustee did not assert this objection at the hearing and the Court will deem this objection abandoned.

4

dividend to their unsecured creditors. Trustee argues that Debtors should surrender their home, find a less expensive home to either buy or rent, and pay the savings to the unsecured creditors, thus increasing their dividend. Trustee argues that if Debtors rented a home for $1,500 per month, that the payments to unsecured creditors could be increased by approximately $45,000 over the term of the plan.

## CONCLUSIONS OF LAW

Section 1325(a)(3) of the Bankruptcy Code provides that a court shall confirm a Chapter 13 plan if, inter alia, "the plan has been proposed in good faith. . . ." 11 U.S.C. § 1325(a)(3). The debtor has the ultimate burden of proving that the plan is confirmable. In re Pearson, 398 B.R. 97, 102 (Bankr. M.D. Ga. 2008). The term "good faith" is not defined in the Bankruptcy Code. The Eleventh Circuit Court of Appeals has held that in determining whether a plan is proposed in good faith, a bankruptcy court must consider the following non-exclusive factors:

> (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of the fluctuation of his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his

5

> debts and his demonstrated bona fides, or lack of same, in dealing with his creditors; (11) the burden which the plan's administration would place on the trustee.

Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983).

Other factors include the extent to which claims are modified, the extent of preferential treatment among classes of creditors, the substantiality of repayment to unsecured creditors, whether a debt would be nondischargeable under Chapter 7, and the accuracy of the plan's statements of debts and expenses. Id. at 889. The Eleventh Circuit also stated, "we do wish to note that other factors or exceptional circumstances may support a finding of good faith, even though a debtor has proposed no or only nominal payment to unsecured creditors." Id.

Good faith is a finding of fact. Jim Walter Homes, Inc. v. Saylors (In re Saylors), 869 F.2d 1434, 1438 (11th Cir. 1989). The bankruptcy courts in the Eleventh Circuit have held that good faith is determined by the totality of the circumstances. Baxter v. Turner (In re Turner), 2010 WL 1189806 (Bank. S.D. Ga., Mar. 17, 2010) (Barrett, J.); In re Lewis, 2009 WL 1856584 (Bankr. M.D. Ala., June 24, 2009) (Williams, J.); In re Pearson, 398 B.R. 97, 102 (Bankr. M.D. Ga. 2008) (Hershner, J.); In re Weiser, 391 B.R. 902, 909 (Bankr. S.D. Fla. 2008) (Cristol, J.); In re Murphy, 375 B.R. 919, 922 (Bankr. M.D. Ga. 2007) (Walker, J.); In re Shelton, 370 B. R. 861, 866 (Bankr. N.D. Ga. 2007) (Murphy, J.); Baxter v. Johnson (In re

6

Johnson), 346 B.R. 256, 261 (Bankr. S.D. Ga. 2006) (Dalis, J.); In re Screen, 2004 WL 2201246 (Bankr. S.D. Ga., Aug. 30, 2004) (Davis, J.).

Applying the Kitchens factors to the case at bar, the Court finds that Debtors are devoting all of their net income to their plan payments, Debtors's budget is "bare bones," Debtors propose to surrender their newest car and keep two unencumbered older vehicles, the attorney's fees of $3,500 requested by Debtors' attorney are comparable to those awarded in similar cases in this district, after Mr. Sweet lost his job Debtors used their savings to pay their bills rather than incurring new debt, this is the first bankruptcy case that Debtors have filed, there is no allegation that Debtors' bankruptcy schedules or statements are not accurate, and no creditor contends that its claim is nondischargeable in bankruptcy. The Court notes that although Debtors were eligible to file a Chapter 7 case and that they have no non-exempt assets, they chose to file a Chapter 13 plan which at least offers some dividend to unsecured creditors. The 60 month term of the proposed plan is the maximum allowed under the Bankruptcy Code. The Court finds that Debtors made a commendable effort before bankruptcy to use their personal savings to meet their obligations rather than to incur debt. Debtors find themselves in financial distress because Mr. Sweet lost his job.

Trustee does not argue that consideration of these factors requires a finding of bad faith. Rather, Trustee objects to Debtors keeping a large home while not making a substantial repayment to the unsecured creditors. Although the Eleventh Circuit in

Kitchens rejected a per se rule that a debtor's failure to make a substantial repayment to unsecured creditors demonstrates a lack of good faith, the circuit court did hold that substantiality of repayment is one of the factors to be considered. Id. at 888-89.

Trustee relies on numerous cases from other jurisdictions where courts have held that the debtors did not propose their plans in good faith where they sought to retain an expensive home while paying only a small dividend to unsecured creditors. However, a close review of those cases reveals that the courts found additional factors other than just the amount of the house payment and dividend to the unsecured creditors in finding a lack of good faith.

For instance, in In re Rice,[4] the court found that the plan had not been proposed in good faith where the debtors had "imprudently" purchased a new home four months prior to the bankruptcy case on the hope that their salaries would increase so that they could afford the home. When they did not realize the increased salaries, the debtors filed for Chapter 13 relief and sought to keep the home while paying only a 13 percent dividend to the unsecured creditors. The court stated that the proposed plan would permit the debtors to maintain their recently acquired jump in lifestyle at the expense of the unsecured creditors. In the case at bar, Debtors purchased their home more than three years ago when their income was significantly higher than now. Subsequent events, apparently over which they had no control, placed them in financial distress.

---

[4] 72 B.R. 311 (D. Del. 1987).

8

Accordingly, unlike the debtors in Rice, the financial problems of Debtors did not result from imprudent purchases.

In In re Leone,[5] the court held that the plan had not been proposed in good faith where the debtors proposed a 36 month plan which paid a dividend of 11 percent to unsecured creditors while paying $205,796 over time (including an arrearage of $18,957) on a home valued at $138,380. The court held that good faith would require that the debtors either find a cheaper replacement home or extend their plan for a term of up to 60 months. In the case at bar, the difference between the amount owed on the first mortgage and the value of Debtors' home is much less than that found in Leone and Debtors propose a 60 month plan, the maximum allowed under the Bankruptcy Code.

In In re Kitson,[6] the debtors proposed a plan which would pay unsecured creditors a 38 percent dividend while retaining a home for which the mortgage payments equaled 28 percent of their net monthly income. The court concluded that the debtors had failed to show good faith in proposing their plan and noted many other excessive expense items in their budget, including child care, club memberships, gym classes, and other miscellaneous expenses. The court noted that certain secured claims would be paid in full early in the plan, but the income which had been used to

---

[5] 292 B.R. 243 (Bankr. W. D. Pa. 2003)

[6] 65 B.R. 615 (Bankr. E. D. N. C. 1986)

9

pay those debts was not then redirected to the unsecured creditors for the remainder of the plan. The court also concluded that the debtors' tax withholdings were excessive. Accordingly, the court held that the debtors were not paying all their disposable income into the plan. Thus, it was not just the mortgage payment and small unsecured dividend that caused the court to find bad faith, but a multitude of expenses which the court found to be unreasonable. In the case at bar, Trustee conceded at the hearing that Debtors have a "bare bones" budget. Furthermore, Debtors are paying all their net income into the plan for a period of 60 months.

In <u>In re Talley</u>,[7] the trustee moved to dismiss the debtor's Chapter 7 case contending that it was an abusive filing under 11 U.S.C. § 707(b)(1). The court found that it was unreasonable for the Chapter 7 debtor who was single and had no children to contribute 80 percent of his net income to pay a mortgage on a rural mobile home with 38 acres. The home was located 106 miles from the debtor's job, thus, increasing his transportation costs. Further, the purpose for which the land had been bought had failed due to environmental regulations. Keeping the home resulted in a budget where the debtor's income was less than projected expenses with the debtor having no means to make up the difference. None of these facts exist in the case at bar.

In <u>In re Loper</u>,[8] the debtor proposed a plan which would pay unsecured

---

[7] 389 B.R. 741 (Bankr. W. D. Wash. 2008)

[8] 367 B.R. 660 (Bankr. D. Colo. 2007)

creditors a 10 percent dividend. The debtors were making interest only payments equal to two-thirds of their monthly income on a 10 year mortgage on a home in which they had no equity. Nor were they ever likely to have any equity since they were making interest only payments. In addition, although certain classified debts were to be paid in full early in the plan, the debtors did not redirect those payments to unsecured creditors for the remaining term of the plan. The debtors were also providing preferential treatment for an unsecured retirement plan loan. Again, none of these facts exist in the case at bar.

Finally, in In re Baird,[9] the court refused to find good faith in a plan which paid a 31 percent dividend to the unsecured creditors. The debtors had purchased their home and a new car while they were in financial difficulty, were already contemplating bankruptcy and already owed $175,000 on credit cards. Under those circumstances, the court found that the monthly house payment was not reasonable. In the case at bar, Debtors purchased their home three years ago when they were on sound financial footing.

In summary, none of the cases relied upon by Trustee stand for the proposition that a plan which pays a small dividend to unsecured creditors while allowing the debtors to retain a home in which they have little or no equity is per se proposed in bad faith. The cases include these factors, but also include a multitude of other factors

---

[9] 2005 WL 612863 (Bankr. N. D. Iowa, Mar. 10, 2005)

which, when viewed together, demonstrate the bad faith of the debtors. While there may be instances where the mortgage payment is so large on a home with no equity and the distribution to unsecured creditors is so small that these factors alone will justify a finding of bad faith, the case at bar is not such a case.

In the case at bar, Debtors find themselves in financial difficulty not because of their imprudent spending habits but because Mr. Sweet lost his job. Having considered the totality of the circumstances, the Court finds that Debtors' plan has been proposed in good faith and that Trustee's objection to confirmation should be overruled.

CONCLUSION

The Court finds that Debtors' Chapter 13 plan has been proposed in good faith and that Trustee's objection to confirmation should be overruled. At the hearing on Trustee's objection, Trustee advised that other matters need to be resolved before the plan is ready for confirmation. An order in accordance with this memorandum opinion will be entered this date.